1

2

3

4

5

6    # UNITED STATES DISTRICT COURT

7    EASTERN DISTRICT OF CALIFORNIA

8    DARLENE DUNN,                                )    1:10-cv-01056 LJO GSA
                                                  )
9                                                 )
                                                  )    **FINDINGS AND RECOMMENDATIONS**
10                          Plaintiff,            )    **REGARDING PLAINTIFF'S**
                                                  )    **SOCIAL SECURITY COMPLAINT**
11          v.                                    )
                                                  )
12   MICHAEL J. ASTRUE, Commissioner              )
     of Social Security,                          )
13                                                )
                                                  )
14                          Defendant.            )
     _____     )

15

16                          **BACKGROUND**

17

18          Plaintiff Darlene Dunn ("Plaintiff") seeks judicial review of a final decision of the

Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for

19   disability insurance benefits pursuant to Title II of the Social Security Act. The matter is

20   currently before the Court on the parties' briefs, which were submitted, without oral argument, to

21   the Magistrate Judge Gary S. Austin for findings and recommendations to the District Court.[1]

22   ///

23

24

25

26

27          [1] Defendant consented to this Court's jurisdiction on July 9, 2010. (Doc. 12) However, on June 29, 2010,
     Plaintiff declined to consent.  (Doc. 9).  Accordingly, this case is submitted to the District Court Judge on these
28   Findings and Recommendations.

1

## FACTS AND PRIOR PROCEEDINGS[2]

2      Plaintiff filed an application for Social Security Disability Insurance Benefits on August

3  31, 2006, alleging disability beginning March 2, 2003. AR11.  Plaintiff's applications were

4  denied initially and on reconsideration. AR 61,64.  Subsequently, Plaintiff requested a hearing

5  before an Administrative Law Judge ("ALJ").  AR 76.  ALJ William Thompson held a hearing

6  on May 10, 2005, and issued an order denying benefits on June 23, 2005. AR. 41-53. Plaintiff did

7  not appeal this decision so the decision became final on that day.[3]

8      Plaintiff applied for Social Security Disability Insurance Benefits a second time on

9  October 6, 2006, alleging disability beginning March 3, 2003.  AR 11.  Plaintiff's applications

10  were denied initially and on reconsideration. AR 54-55.  Plaintiff requested a hearing before an

11  ALJ. AR 76.  ALJ Howard Treblin held a hearing on March 28, 2008, and issued a decision

12  denying benefits on June 27, 2008. AR 8-21.  The Appeals Council issued a decision affirming

13  the ALJ's order on April 13, 2010. AR 1-3.

14  **Hearing Testimony**

15      ALJ Treblin held a hearing in Stockton, California, on June 25, 2008.  Plaintiff personally

16  appeared and was assisted by attorney Jeffrey Milam.  AR 22-40.

17      Plaintiff was fifty-three years old at the time of the hearing.  AR 25.  She is married and

18  lives with her husband and her thirty-three year old son. AR 25, 33.  Her husband is working and

19  supports the family.  AR 34.  Plaintiff completed the eleventh grade but does not have a GED.

20

21      [2] References to the Administrative Record will be designated as "AR," followed by the appropriate page

22  number.

23      [3] In *Chavez v. Bowen*, 844 F. 2d at 693, the Ninth Circuit held that the principals of res judicata apply to
administrative decisions. In order to overcome the presumption of continuing non-disability arising from a prior

24  ALJ's finding, a plaintiff must prove "changed circumstances" indicating a greater disability. *Chavez v. Bowen*, 844
F.2d at 691.  Moreover, an ALJ's previous findings concerning residual functional capacity, education, and work

25  experience are entitled to some res judicata consideration and such findings cannot be reconsidered by a subsequent
judge absent new information. *Chavez v. Bowen*, 844 F.2d at 694.  A changed circumstance includes a change in the

26  claimant's age category under 20 CFR 404.1563 or 416.963, an increase in the severity of the claimant's
impairment(s), the alleged existence of an impairment(s) not previously considered, or a change in the criteria for

27  determining disability.  Acquiescence Ruling 97-4(9).  As noted by ALJ Treblin, Plaintiff has changed an age
category .  Notwithstanding the above, after reviewing the medical record, the ALJ found that Plaintiff was not

28  disabled under the Act.  AR 12.

1  AR 26.  She is however, able to read, write, and do simple math. AR 26. Plaintiff has a driver's

2  license but she cannot drive long distances without experiencing pain. AR 25-26.

3      Plaintiff worked as department manager at K-Mart from 1991 until January 2003.  AR

4  26-28.  She was terminated in 2003 due to disputes over merchandise and pricing.  AR 26-27.

5  She has not worked since her termination.  AR 26-27.

6      Plaintiff's physical problems began in 2003 after she fell off a ladder and broke her fibula

7  and tore her Anterior Cruciate Ligament ("ACL").  AR 27-28.  Her doctors recommended that

8  she have surgery but she did not do so because she was afraid of the procedure.  AR 28-29.  She

9  also has pain in her back and she wears a brace when she doing heavy work in the garden or

10  feeding her animals.  AR 30.

11      Plaintiff smokes approximately one pack of cigarettes per day which causes her to have

12  shortness of breath.  AR 28.  She also suffers from anxiety several times a month but she usually

13  calms down after taking her "nerve pill."  AR 29.  She has high blood pressure and a stomach

14  ulcer, however, she is able to manage her stomach pain by taking Hydocodone four times a day.

15  AR 30-31.  Despite taking the medication, Plaintiff reports that her pain is an eight out of ten on

16  most days.  AR 31.  As a result of the pain, she lies down approximately four to five times per

17  day for twenty to thirty minutes at a time. AR 31-32.  Plaintiff has not had epidural injections

18  because she is afraid that she will become paralyzed. AR 38.

19      Plaintiff's primary care doctor is Veronica David.  AR 32.   Plaintiff sees her doctor as

20  needed which usually is once every six months.  AR 32.  Plaintiff is only able to lift between five

21  and ten pounds and she is not able to lift anything over her head.  AR 32-33. She is able to sit in

22  a chair with her back straight for no more than three to five minutes and she has difficulty

23  bending over.  AR 33.  Plaintiff also has difficulty concentrating, getting along with others, and

24  sleeping at night  AR 33-34.

25      Despite these limitations, Plaintiff is able to take a shower, do the dishes and laundry, as

26  well as feed her animals including a pig, chickens, and horses. AR 35.  She also gardens, grocery

27  shops, and helps with her grandchildren daily.  AR 35.  However, she is no longer able to do

28

1   other activities that she used to do such as going tubing in the lake, going four wheeling with her

2   husband, or horseback riding. AR 36.

3       **Medical Record**

4         The entire medical record was reviewed by the Court (AR 127-233), however, only those

5   medical records relevant to the issues on appeal will be addressed below as needed in this

6   opinion.

7        *Documents from Sutter Gould Medical Foundation*

8         In March 2003, Plaintiff fell off a ladder, landed on her right hip, and experienced severe

9   pain in the right thigh and knee area. TR 14, 135. She was examined by Thomas Kraft,

10   Physician's Assistant ("PA"), in the Department of Orthopedics on March 14, 2003 for severe

11   pain and intermittent swelling from her right mid-thigh down to the foot. AR 134-136.

12   According to MRIs and x-rays taken within a month of her fall, Plaintiff sustained a fractured

13   calf bone near the knee (proximal fibular fracture), a suspected torn knee ligament (ACL), and a

14   bruised ankle. TR 14, 128. A lumbar spine MRI dated April 15, 2003 showed "some mild disc

15   bulging at L1-2, L3-4 without disk protrusion." and a hip and pelvis MRI ruled out injuries in

16   those areas. TR 14, 128. Plaintiff was diagnosed with suspected complex regional pain syndrome

17   ("RSD") of the lower leg, and referred to the pain management clinic. TR 14, 129.

18         On May 15, 2003, Plaintiff was examined again by PA Kraft. AR 128.  It was noted that

19   Plaintiff's walk was antalgic. She held her knee at about 35 degrees of flexion when she walked

20   and limped quite profoundly.  There was some cyanosis (bluish coloring due to lack of oxygen)

21   of the right leg and palpation revealed that the right leg was cooler than the left leg from the knee

22   down to the toes.  AR 128.

23         On August 13, 2003, Radiologist Cesar Tumakay, D.O. reported that an MRI scan of

24   Plaintiff's right knee indicated a "chronic tear of a pascicle ACL in which the torn fragment has

25   now [sic] parasitization of blood supply from the posterior cruciate ligament." AR 140.

26         On March 30, 2004, Plaintiff returned to PA Kraft for examination.  AR 206.  At that

27   time is was noted that in January 2004, Plaintiff had fallen in her kitchen while carrying a bag of

28   groceries and she developed right sided sciatica. AR 206. Plaintiff reported she was doing some

work around the ranch with her horses but that she had to rest because of chronic back pain and pain radiating into her right leg.  An examination revealed that her reflexes were 2/4 KJ and AJ bilaterally.  She had 4/5 weakness of the right "EHL" but otherwise her strength in both lower extremities was normal.  AR 206-207.  Plaintiff's leg raise test was positive for back pain but not for leg pain. Full range of motion of the right hip without tenderness was noted. AR 206-207; 209-210.  PA Kraft also indicated that an MRI and x-rays revealed there was no bony lesions, fractures or spinal stenosis.  AR 207.   There was some dessication of the L3-4 and the L4-5 lumbar disc and also a milder dessication of the T12-L1 disc as well. However, no herniated discs were noted.  AR 207, 209.  Plaintiff was diagnosed with contusion of the lumbar spine, complex regional pain syndrome in the lower right extremity and a sprain of the cruciate ligament of the right knee.  AR 207.   Plaintiff was referred to Dr. Gesson for pain management. AR 207.

On April 13, 2004, Plaintiff saw Dr. Gesson, a pain specialist who noted Plaintiff had fears of injections and epidurals.  He prescribed Paxil in an attempt to alleviate her anxiety and reported that in the future Plaintiff could be sedated during any pain injection procedures. Dr. Gesson was waiting to hear whether Plaintiff was interested in receiving pain management therapy.  AR 205.

In May 2004, Plaintiff began seeing Dr. Satvinder Sachdeva, M.D.,who diagnosed her with low back pain syndrome.  He recommended physical therapy. TR 197, 199. Plaintiff reported that she does not like to take medications.  AR 199.  Although Plaintiff had seen Dr. Gesson, she told Dr. Satvinder that she was not interested in receiving epidural injections.  AR 199.

On August 6, 2004, Plaintiff was seen by Nancy Gills, P.A. who noted that Plaintiff's reported pain in her back was a 9/10.  AR 194. Upon examination, Plaintiff's gait was antalgic, however, her range of motion was normal in her knee and back.  Plaintiff was tender over the sacro-sciatic notch in her hip and she had some decreased right hip flexion.  She had normal hip extension, however, abduction produced right saccral pain. AR 195.  Plaintiff was prescribed

1  Gabapentin and then told to report for a follow-up in two weeks.  AR 195.  An x-ray performed

2  on that same day was unremarkable. AR 196.

3       In September 2004, Plaintiff returned to see Dr. Sachdeva again who noted that in spite of

4  "endlessly complaining of pain in her low back and leg," Plaintiff was reluctant to take

5  prescribed non-steroidal anti-inflammatory medication (NSAID) due to an alleged history of

6  bleeding ulcer. AR 192.  Plaintiff indicated that she did not want to see Dr. Gesson either. AR

7  192.  Plaintiff saw Dr. Sachdeva again on November 29, 2004 for low back pain. AR 189-190.

8       Plaintiff was examined on August 8 and 10, 2006, by Drs. Veronica David and Ton Ngo

9  after Plaintiff was in a car accident and complained of neck, back, and left shoulder pain.

10  Plaintiff was diagnosed with a back sprain. AR 176.  A cervical spine x-ray series performed on

11  August 8, 2006, revealed mild bilateral luschka joint spurring seen at the C4-C5 but otherwise

12  the findings were unremarkable. AR 180.  T-spine x-rays performed on that same day revealed

13  minimal spondylosis in the lower T-spine segments with no acute injury noted.  AR 181. Lumbar

14  spine x-rays revealed that there had been no changes since the prior x-rays in 2004. AR 182.

15  Mild spondylosis was noted throughout the entire lumbar spine.  AR 182. Mild scoliosis was also

16  diagnosed.  AR 182.

17       *Consultative Examining Physician Tri Minh Pham*

18       Dr. Tri Minh Pham, M.D., performed a consultive examination at the request of the

19  Social Security Administration on December 22, 2006. AR 147. Dr. Pham noted that Plaintiff

20  was not in any acute distress, exhibited no tenderness in the back, had a normal range of motion

21  in her back, had normal (5/5) muscle strength in her arms and legs, and a normal gait. AR 15,

22  147-148. Dr. Pham also noted that Plaintiff could raise both legs to 95 degrees.  Based on his

23  examination and an interview with Plaintiff, Dr. Pham observed that Plaintiff's back and right leg

24  pain had improved with no limitation of range of motion.  He opined that Plaintiff was

25  unrestricted in her abilities to walk, stand, sit, carry, lift, and handle objects. AR 148.

26       *Consultative Non-Examining Physician James V. Glaser*

27       On January 12, 2007, state agency physician, James V. Glaser, M.D., reviewed the

28  medical reports and opined Plaintiff had the residual functional capacity for light work, but

1  opined that she should never climb ladders, ropes, and scaffolds, and she should only

2  occasionally climb ramps and stairs, kneel, crouch, and crawl. TR 151-154.

3      *Treating Physician Dr. Veronica David*

4      Plaintiff began seeing Dr David regularly  in January 2005.  Dr. David noted that plaintiff

5  was complaining of chronic back pain but that the 2004 MRI performed was "essentially

6  normal."  She did however note that there was sone mild dessicative DDD at L3-4 and L4-5 with

7  associated mild annular bulging.  AR 186.  On March 31, 2005, Plaintiff was seen again for a

8  follow-up appointment.  It was noted that a recent MRI of Plaintiff's lumbar spine noted no

9  significant change from the one performed in March 2004.  AR 184.

10      Dr. David saw Plaintiff again on March 30, 2007, for complaints of low back and

11  shoulder pain.  AR 167.   Plaintiff was taking Lortab, Hydrochlorothiazide, Aciphex, and

12  Albuterol. AR 168.  It was noted that Plaintiff had missed at least three appointments in the past

13  six months and she was warned that if she missed future appointments she would be terminated

14  from Dr. David's practice.  AR 168.  Plaintiff was diagnosed with low back pain; anxiety state

15  not otherwise specified; hypertension; and tobacco use disorder.  AR 168, 177.

16      Dr. Veronica David, M.D., gave Plaintiff a complete physical examination on April 27,

17  2007.  Dr. David described Plaintiff as "[w]ell developed, well nourished 52 year old, female,

18  alert, oriented, in no apparent distress." AR 162. During the examination, Dr. David noted that

19  Plaintiff complained of constant sharp pain in her foot that radiates to her leg twice a week as

20  well as back pain.  AR161-162.  However, Plaintiff declined physical therapy. AR 162.  X-rays

21  taken at the time of the examination revealed a small calcaneal plantar spur and a small

22  osteophyte attachment of the Achilles tendon.  AR 164.  The ankle mortise and ankle joint were

23  within normal limits and there was no fracture or dislocation.  AR 164.  It was also noted that the

24  fifth metatorsal fracture was healed. AR 164. Mild hallus valgus deformity and early

25  degenerative changes at the first metatarsal joint were diagnosed.  AR 164-165.

26      Dr. David examined Plaintiff again in June 2007 for right leg pain. AR 231. Upon

27  physical examination, Plaintiff's right hip, knee, and ankle revealed "excellent range of motion,"

28  and her knee ligaments were stable. TR 232. Tenderness anteriorly and laterally was noted..AR

232.  X-rays of her right tibia, ankle, and foot were normal. AR 232. Plaintiff was advised that treatment for her back pain would include epidural steroid injection or surgery, however, Plaintiff refused to participate in both of these treatments. AR 232.

In January 2008, Dr. David again described Plaintiff as "well developed, well nourished, . . [and] in no apparent distress." AR 223. Though Plaintiff continued to complain of persistent back pain, she again declined to have physical therapy. AR 222. Plaintiff was taking Lortab as needed for pain management.  AR 222.

In March 2008, Dr. David completed a questionnaire in which she opined that, based on a 2003 MRI, Plaintiff was only able to sit, stand and walk for three to five minutes at a time, and that she must elevate her legs thirty minutes a day at least three to four times per day. TR 233.

**ALJ Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard.  AR 21.  More particularly, the ALJ found that Plaintiff had not engaged in substantial gainful activity from her alleged onset date of March 3, 2003, through the date of insured of September 30, 2007.  AR 14.  Further, the ALJ identified a right knee injury with resultant complex regional pain syndrome and back impairments.  AR 14.  Nonetheless, the ALJ determined the severity of Plaintiff's impairments did not meet or exceed any of the listed impairments.  AR 16.

Based on his review of the entire record, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform light work except that she can "climb ramps and stairs, stoop, kneel, crouch and crawl occasionally, but she should never climb ladders, ropes, or scaffolds." AR 17.  The ALJ also determined that Plaintiff should avoid concentrated exposure to workplace hazards such as moving machinery and unprotected heights.  AR 17.  Next, the ALJ determined that Plaintiff could not perform her past work.  AR 19.  However, using the Medical-Vocational Rules 202.21 and 202.22, Appendix 2, Subpart P, Regulation 4 ("the grids"), the ALJ determined Plaintiff was not disabled as defined by the Social Security Act. AR 21.

///

///

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. § 405 (g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

**REVIEW**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process.  20

1    C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f).   Here, Plaintiff argues that the ALJ : 1) improperly

2    rejected Plaintiff's treating physician opinion, 2) incorrectly made an adverse credibility

3    determination, and 3) failed to meet his burden at step five.   In opposition, Defendant argues that

4    the ALJ: 1) properly evaluated the physicians' opinions and the medical record, 2) correctly

5    rejected Plaintiff's testimony, and 3) met his burden at step five by properly applying the grids.

6                                              **DISCUSSION**

7    ***A.     Physician Opinion Evidence***

8            Plaintiff argues that the ALJ improperly rejected Plaintiff's treating physician opinion and

9    instead erroneously relied upon the opinion of a non-examining state agency medical consultant.

10   Defendant contends that the ALJ's consideration of the medical opinion evidence was proper.

11          Cases in this circuit distinguish among the opinions of three types of physicians: (1) those

12   who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant

13   (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining

14   physicians).   As a general rule, more weight should be given to the opinion of a treating source

15   than to the opinion of doctors who do not treat the claimant.   *Winans v. Bowen*, 853 F.2d 643,

16   647 (9th Cir. 1987).   At least where the treating doctor's opinion is not contradicted by another

17   doctor, it may be rejected only for "clear and convincing" reasons.   *Baxter v. Sullivan*, 923 F.2d

18   1391, 1396 (9th Cir. 1991).   Even if the treating doctor's opinion is contradicted by another

19   doctor, the Commissioner may not reject this opinion without providing "specific and legitimate

20   reasons" supported by substantial evidence in the record for so doing.   *Murray v. Heckler*, 722

21   F.2d 499, 502 (9th Cir. 1983).

22          The opinion of an examining physician is, in turn, entitled to greater weight than the

23   opinion of a nonexamining physician.   *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990);

24   *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984).   As is the case with the opinion of a treating

25   physician, the Commissioner must provide "clear and convincing" reasons for rejecting the

26   uncontradicted opinion of an examining physician.   *Pitzer*, 908 F.2d at 506. And like the opinion

27   of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor,

28

1    can only be rejected for specific and legitimate reasons that are supported by substantial evidence

2    in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

3        The opinion of a nonexamining physician cannot, by itself, constitute substantial evidence

4    that justifies the rejection of the opinion of either an examining physician or a treating physician.

5    *Pitzer*, 908 F.2d at 506 n. 4; *Gallant*, 753 F.2d at 1456.  In some cases, however, the ALJ can

6    reject the opinion of a treating or examining physician, based in part on the testimony of a

7    nonexamining medical advisor.  *E.g., Magallanes v. Bowen,* 881 F.2d 747, 751-55 (9th

8    Cir.1989); *Andrews*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir.1995).  For

9    example, in *Magallanes*, the Ninth Circuit explained that in rejecting the opinion of a treating

10    physician, "the ALJ did not rely on [the nonexamining physician's] testimony alone to reject the

11    opinions of Magallanes's treating physicians . . .."  *Magallanes*, 881 F.2d at 752.  Rather, there

12    was an abundance of evidence that supported the ALJ's decision: the ALJ also relied on

13    laboratory test results, on contrary reports from examining physicians, and on testimony from the

14    claimant that conflicted with her treating physician's opinion.  *Id*. at 751-52.  The opinions of

15    nonexamining physicians are substantial evidence where they are supported by clinical findings

16    and objective tests.  *See Magallanes v. Bowen*, 881 F.2d at 751.

17        Here, the ALJ had three acceptable medical opinions to consider: (1) Dr. David,

18    Plaintiff's treating physician, 2) Dr. Tri Pham, a state consultative examining physician, and 3)

19    Dr. Glaser, a state agency non-examining physician.  Therefore, the ALJ must provide specific

20    and legitimate reasons for rejecting Plaintiff's treating physician's opinion.  With regard to the

21    physician evidence the ALJ stated as follows :

22        As for the opinion evidence the undersigned gives substantial weight to
         the assessments of the State Agency medical consultant to the effect the claimant

23        can perform light work (B3F).  The assessments are wholly consistent with the
         weight of the evidence in the record and rendered by physicians who are experts

24        in the evaluation of medical issues in disability claims under the Social Security
         Act. Although the State Agency consultive examiner determined that the claimant

25        had no vocationally relevant limitations and the conclusion is well-supported by
         the findings on examination, the undersigned gives the claimant every benefit of

26        the doubt and concludes that she is limited to light work, primarily as a result of
         her subjective complaints.

27

28        The undersigned give[s] little weight to the March 26, 2008 assessment of
         the claimant's treating physician to the effect that the claimant is unable to

perform even sedentary work (B10).  The findings on examination during office
visits are not consistent with what one would expect if the claimant were truly
disabled, as the doctor has reported.  Further, the doctor apparently relied quite
heavily on the subjective report of symptoms and limitations provided by the
claimant, and seemed to uncritically accept as true most, if not all, of what the
claimant reported despite her consistent refusal to pursue other treatment
modalities. Yet, as explained elsewhere in this decision, there exists good reasons
for questioning the reliability of claimant's subjective complaints.
AR 19.

Plaintiff argues that Dr. David's opinion was not based on Plaintiff's subjective

complaints but instead on objective evidence in the record.  Specifically, Dr. David references an

MRI completed in April 2003 which revealed mild disc bulging at L1-L2, L3-L4 and L4-L5 in

support of her findings.  AR 233.  Moreover, Plaintiff argues that the medical documentation

supports the conclusion that Plaintiff suffered from several significant impairments and that the

ALJ failed to consider all of her impairments including her anxiety and her pain condition.  The

Court disagrees.

The ALJ addressed all the relevant portions of the medical record in his opinion.  AR 14-

16.  Although Plaintiff argues that Dr. David relied on the medical record because she cites to a

2003 MRI in the report, there is a legitimate basis for the ALJ's conclusions.  For example, Dr.

David relies on the 2003 MRI to conclude Plaintiff has significant limitations.  However, during

an earlier office visit, Dr. David noted that Plaintiff's MRI performed in 2004, which revealed

mild dessicative degenerative disc disease, was essentially normal.[4] Compare AR 186 and 233.

Moreover, the ALJ clearly recognizes that Plaintiff suffers from several impairments, however he

also notes that the impairments are mild and that most recent treatment records indicate that

despite complaints of chronic pain, Plaintiff has refused any treatment including surgery,

epidurals, and physical therapy.  AR 15. This finding is supported by the medical record and

Plaintiff's own testimony.  AR 28-29, 38, 162, 180-182, 192, 199, 222, 232, 205, 207.

Similarly, the Court rejects Plaintiff's arguments that the ALJ did not consider Plaintiff's

anxiety and RSD.  To the contrary, the ALJ thoroughly evaluated Plaintiff's anxiety condition

---

[4]  The record reveals that there were no significant changes in x-rays done in March 2004, January 2005 and
August 2006. AR 182.

but determined this condition did not cause more than a minimal limitation in Plaintiff's ability to perform basic work activities and is nonsevere.  AR 15-16.  Part of this analysis was an evaluation of Plaintiff's own testimony where she indicates that she suffers from anxiety several times a month but she usually calms down after taking a "nerve pill."  AR 16, 29.  Moreover, the ALJ noted that he would give Plaintiff the benefit of the doubt and restrict her to light work based on her subjective complaints. AR 19, 147-148, 151-154.  Thus, it is clear that the ALJ considered Plaintiff's anxiety and pain condition despite his finding that she was not credible. Finally, as discussed below, the ALJ's credibility is also based on substantial evidence and serves as a legitimate and specific reason to reject Dr. David's opinion.

**B.      Credibility**

Plaintiff argues that the ALJ failed to provide clear and convincing reasons for rejecting her testimony.  Defendant argues that the ALJ's credibility finding is supported by substantial evidence.

A two step analysis applies at the administrative level when considering a claimant's subjective symptom testimony.  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged.  *Id*. at 1281-1282.  If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only if he makes specific findings that include clear and convincing reasons for doing so.  *Id*. at 1281.  The ALJ must "state which testimony is not credible and what evidence suggests the complaints are not credible." *Mersman v. Halter*, 161 F.Supp.2d 1078, 1086 (N.D. Cal. 2001), quotations & citations omitted ("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence"); Social Security Ruling ("SSR") 96-7p (ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight").

An ALJ can consider many factors when assessing the claimant's credibility. *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ can consider the claimant's reputation for truthfulness, prior inconsistent statements concerning his symptoms, other testimony by the claimant that appears less than candid, unexplained or inadequately explained failure to seek treatment, failure to follow a prescribed course of treatment, claimant's daily activities, claimant's work record, or the observations of treating and examining physicians. *Smolen*, 80 F.3d at 1284; *Orn v. Astrue*, 495 F.3d 625, 638 (2007).

The first step in assessing Plaintiff's subjective complaints is to determine whether Plaintiff's condition could reasonably be expected to produce the pain or other symptoms alleged. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). Here, the ALJ identified a right knee injury with resultant complex regional pain syndrome and back impairments as severe impairments. AR 14. He further found that:

> After considering the evidence of record, the undersigned finds that the [Plaintiff's] medically-determinable impairments can reasonably be expected to produce the alleged symptoms, but the [Plaintiff's]statements about the intensity, persistence, and limiting effects of those symptoms are not credible to the extent they are inconsistent with my assessment of his residual functional capacity, for the reasons explained below.

AR 18. This finding satisfied step one of the credibility analysis. *Smolen*, 80 F.3d at 1281-1282.

Because the ALJ did not find that Plaintiff was malingering, he was required to provide clear and convincing reasons for rejecting Plaintiff's testimony. *Smolen*, 80 F.3d at 1283-1284; *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) (as amended). When there is evidence of an underlying medical impairment, the ALJ may not discredit the claimant's testimony regarding the severity of his symptoms solely because they are unsupported by medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991); SSR 96-7. Moreover, it is not sufficient for the ALJ to make general findings; he must state which testimony is not credible and what evidence in the record leads to that conclusion. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Bunnell*, 947 F.2d at 345-346.

Here, the ALJ made several specific credibility findings:

> ... although the claimant has received treatment for the allegedly disabling impairments, that treatment has been routine and conservative in nature. The claimant has declined any treatment modalities other than the use of narcotic pain

14

medication.  She was offered epidural steroid injections and surgical consultations but either cancelled the appointments or declined the referral.  Radiographic findings are relatively benign with only minimal findings and physical examinations reveal full range of motion.  It is notable that the claimant cancelled or failed to show up for so many doctor appointments that she was warned on at least two occasions that further failures to appear would result in discharge from the practice.  The claimant was prescribed and has taken hydrcodone for her pain complaints, which weighs in the claimant's favor, but the medical records reveal that the medications have been relatively effective in controlling the claimant's symptoms.  In light of the foregoing, the claimant's description of the severity of her pain and limitations has been so extreme as to appear implausible.  Further, the claimant has described daily activities which are not limited to the extent one would expect given the complaints of totally disabling symptoms and limitations.  Although she may no longer be able to ski or sled, her daily activities as reported are at odds with reports of totally disabling pain or illness.  All these activities require a combination of standing, walking, sitting, lifting, carrying, pushing, pulling consistent with the ability to perform work at some level of exertion.  Finally, there is evidence that the claimant stopped working for reasons not related to the allegedly disabling impairments.  The undersigned after evaluating these reports. considers them an inconsistency bearing on credibility.  These reports do not support the claimant's complaints of a disabling level of pain or illness and indicate that, at the least, she is exaggerating her limitations.
AR 18-19.

In short, the ALJ provided a number of clear and convincing reasons that are supported by the record when concluding Plaintiff's subjective symptom testimony was less than credible.  These reasons include: (1) Plaintiff's conservative treatment (AR 28-29, 38, 192, 199, 205, 207)[5]; (2) her failure to attend medical appointments despite complaints of severe pain (AR 168); (3) an inconsistency between her alleged symptoms and the medical evidence (180-184, 184, 196); (4) her activities of daily living include skills and abilities that are transferrable to some level of exertional work (AR 35-36);  and (5) Plaintiff stopped working for reasons other than her disabling condition. AR 26-27.

Thus, ALJ Treblin clearly identified what testimony he found not credible and what evidence undermined Plaintiff's complaints.  *Lester v. Chater,* 81 F.3d at 834. Furthermore, the reasons provided are acceptable.  *See, e.g., Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (inconsistencies between the record and medical evidence supports a rejection of a claimant's credibility; no medical treatment or a conservative level of medical treatment has been

---

[5] Although Plaintiff argues that she did not receive epidural treatments and surgery because of her anxiety condition, Plaintiff also refused physical therapy and also refused treatment with a pain specialist who indicated that he could medicate Plaintiff during any procedure to alleviate her anxiety.  AR 162, 205, 207, 222, 232.

found to suggest a lower level of pain and functional limitations);[6] *Fair v. Bowen*, 885 F.2d at
603-04 (claiming severe conditions yet receiving minimal, conservative, or no treatment is a
basis to reject claimant's testimony; additionally, failure to follow prescribed treatment can be
considered in determining credibility); " *Tommasetti v. Astrue*, 533 F. 3d at 1039 (ALJ properly
inferred that the claimant's pain was not as all-disabling as he reported in light of fact that the he
did not seek an aggressive treatment program); *Meanel v. Apfel*, 172 F. 3d 1111, 1113 (9th Cir.
1999) (subjective pain complaints properly discredited where claimant complained of intense
pain but only received minimal and "conservative" treatment),

Furthermore, contrary to Plaintiff's contention, the ALJ may discount Plaintiff's
credibility based on daily activities. *Orn v. Astrue*, 495 F.3d at 638. Here, the ALJ noted that
although Plaintiff is not able to ski or go sledding[7] the ADL skills Plaintiff does perform require
a combination of standing, walking, sitting, lifting, carrying, pushing, pulling consistent with the
ability to perform work at some level of exertion. This reasoning, in conjunction with the other
basis for the ALJ's credibility finding, constitute clear and convincing reasons.

Finally, although evidence supporting an ALJ's conclusions might also permit an interpretation
more favorable to the claimant, if the ALJ's interpretation of evidence was rational, as here, the
Court must uphold the ALJ's decision where the evidence is susceptible to more than one
rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005). Thus, because
there is evidence to support the ALJ's conclusion, even were one of the ALJ's reasons erroneous
or improper, the decision should be upheld. *See eg., Batson v. Barnhart*, 359 F.3d 1190, 1197
(9th Cir. 2004) (upholding ALJ's credibility determination even though one reason may have
been in error).

///

---

[6] *See also* 20 C.F.R. § 416.929 (objective medical evidence can be used in determining credibility; SSR
96-7p (objective medical evidence is a useful indicator to assist in making a reasonable conclusion about credibility
and the ability to function).

[7] The ALJ indicates that Plaintiff is not able to go sledding however, a review of the record indicates that
Plaintiff's testimony related to her inability to go tubing and four wheeling. This error was harmless. AR 36.

1
    ### C.      Step Five and the ALJ's Use of the Grids

2        Plaintiff argues that the limitations included by the ALJ in his RFC findings (or the

3   limitations that the ALJ *should have* included in his RFC finding, namely a sit/stand option,

4   elevation of her legs, simple work, a limited ability to work with others, and environmental

5   limitations,) constituted significant non exertional-limitations that eroded the occupational base

6   for light work.  Accordingly, use of the grids at step five was inappropriate.  Defendant argues

7   that the ALJ's finding at step five was supported by substantial evidence.

8        The claimant has the initial burden of proving the existence of a disability within the

9   meaning of the Social Security Act.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).  The

10  claimant establishes a prima facie case of disability by showing that a physical or mental

11  impairment prevents him or her from engaging in his or her previous occupation.  *Gallant v.

12  Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f).

13  However, once the claimant establishes a prima facie case of disability, the burden of going

14  forward with the evidence shifts to the Secretary.  *Hammock v. Bowen*, 867 F.2d 1209 (9th Cir.

15  1989).  The Secretary bears the burden of establishing the existence of alternative jobs available

16  to the claimant, given his or her age, education, and medical-vocational background.  In an

17  appropriate case, the Secretary may meet this burden through application of the medical-

18  vocational guidelines set forth in the regulations.[8]  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2

19  ("Appendix 2");  *Heckler v. Campbell*, 461 U.S. 458 (1983); *Odle v. Heckler*, 707 F.2d 439, 440

20  (9th Cir. 1983).  If the guidelines do not accurately describe a claimant's limitations, the

21  Secretary may not rely on them alone to show availability of jobs for the claimant.  *Desrosiers v.

22  Secretary*, 846 F.2d 573 (9th Cir. 1988).  However, the mere allegation of the presence of a non-

23  exertional impairment is not sufficient to preclude application of the guidelines.  Such non-

24  exertional impairment must be found to significantly limit the range of work permitted by a

25  claimant's exertional limitations before the Secretary will be required to obtain expert vocational

26

27        [8] For any given combination of factors (residual functional capacity, age, education, and work experience),
    the guidelines direct a conclusion of disability or nondisability when they accurately describe a claimant's particular
28  limitations.

1  testimony regarding the availability of other work.  *See, e.g., Polny v. Bowen,* 864 F.2d 661 (9th

2  Cir. 1988); *Burkhart v. Bowen*, 856 F.2d 1335 (9th Cir. 1988); *Razey v. Heckler*, 785 F.2d 1426,

3  1430 (9th Cir. 1986) (modified 794 F.2d 1348 (1986)); and *Perminter v. Heckler*, 765 F.2d 870

4  (9th Cir. 1985).

5        Here, the ALJ found Plaintiff had the RFC to perform light work except that Plaintiff can

6  "climb ramps and stairs, stoop, kneel, crouch and crawl occasionally, but she should never climb

7  ladders, ropes, or scaffolds."  AR 17.  The ALJ also determined that Plaintiff should avoid

8  concentrated exposure to workplace hazards such as moving machinery and unprotected heights.

9  AR 17.  The ALJ further found that Plaintiff's additional limitations had little or no effect on the

10  occupational base of unskilled light work.  AR 20.  He applied the medical-vocational guidelines

11  as a framework and determined that jobs exist in significant numbers in the national economy

12  that the Plaintiff can perform.  AR 19-20.

13        Although Plaintiff argues that the ALJ should have imposed additional limitations, the

14  ALJ's RFC is supported by substantial evidence as previously explained in this order.  Further,

15  this Court is not persuaded by Plaintiff's argument that SSR 85-15 precludes the application of

16  guidelines based on the limitations imposed by the ALJ including occasional climbing ramps and

17  stairs, stooping, kneeling, crouching and crawling, as well as avoiding concentrated exposure to

18  workplace hazards such as moving machinery and unprotected heights. In support of her

19  argument, Plaintiff cites only to select sections of SSR 85-15.  However, the complete relevant

20  portions of this rule provides as follows :

21        2. Postural-Manipulative Impairments

22        a. Limitations in climbing and balancing can have varying effects on the
          occupational base, depending on the degree of limitation and the type of job.
23        Usual everyday activities, both at home and at work, include ascending or
          descending ramps or a few stairs and maintaining body equilibrium while doing
24        so. These activities are required more in some jobs that in others, and they may be
          critical in some occupations. *Where a person has some limitation in climbing*
25        *and balancing and it is the only limitation, it would not ordinarily have a*
          *significant impact on the broad world of work*. Certain occupations, however,
26        may be ruled out; e.g., the light occupation of construction painter, which requires
          climbing ladders and scaffolding, and the very heavy occupation of fire-fighter,
27        which sometimes requires the individual to climb poles and ropes. Where the
          effects of a person's actual limitations of climbing and balancing on the

28

occupational base are difficult to determine, the services of a VS may be necessary.

b. Stooping, kneeling, crouching, and crawling are progressively more strenuous forms of bending parts of the body, with crawling as a form of locomotion involving bending. Some stooping (bending the body downward and forward by bending the spine at the waist) is required to do almost any kind of work, particularly when objects below the waist are involved. *If a person can stoop occasionally (from very little up to one-third of the time) in order to lift objects, the sedentary and light occupational base is virtually intact.* However, because of the lifting require for most medium, heavy, and very heavy jobs, a person must be able to stoop frequently (from one-third to two-thirds of the time); inability to do so would substantially affect the more strenuous portion of the occupational base. *This is also true for crouching* (bending the body downward and forward by bending both the legs and spine). However, *crawling on hands and knees and feet is a relatively rare activity even in arduous work, and limitations on the ability to crawl would be of little significance in the broad world or work. This is also true of kneeling (bending the legs at the knees to come to rest on one or both knees).*

5. Environmental Restriction

A person may have the physical and mental capacity to perform certain functions in certain places, but to do so may aggravate his or her impairment(s) or subject the individual or others to the risk of bodily injury. Surroundings which an individual may need to avoid because of impairment include those involving extremes of temperature, noise, and vibration; recognized hazards such as unprotected elevations and dangerous moving machinery; and fumes, dust, and poor ventilation. *A person* with a seizure disorder *who is restricted only from being on unprotected elevations and near dangerous moving machinery is an example of someone whose environmental restriction does not have a significant effect on work that exist at all exertional levels.*

Where a person has a medical restriction to avoid excessive amounts of noise, dust, etc., the impact on the broad world of work would be minimal because most job environments do not involve great noise, amounts of dust, etc.

Where an individual can tolerate very little noise, dust, etc., the impact on the ability to work would be considerable because very few job environments are entirely free of irritants, pollutants, and other potentially damaging conditions.

Where the environmental restriction falls between very little and excessive, resolution of the issue will generally require consultation of occupational reference materials or the services of a VS.
SSR 85-15.

Thus, the ability to occasionally climb, stoop, kneel, crouch and crawl does not erode the occupational base for light work. As stated above, use of the Medical Vocational Guidelines is precluded only if the ALJ determines that the claimant's non-exertional limitations significantly limit the range of work permitted by her exertional limitations. Plaintiff argues that the ALJ erred by not including limitations that Plaintiff can only do simple work or has a limited ability to

1   work with others.  She contends that had he done so, he would have been required to take the

2   testimony of a vocational expert at the hearing.  However, as previously noted, the ALJ's  RFC is

3   supported by substantial evidence and he did not err by failing to include these limitations.

4          Moreover, even if the ALJ had imposed those limitations, use of the guidelines would not

5   be precluded.  Light work represents " substantial work capability compatible with making a

6   work adjustment to substantial numbers of unskilled jobs, and thus generally provides sufficient

7   occupational mobility even for severely impaired individuals who are not of advanced age and

8   have sufficient educational competencies for unskilled work."  *See* 20 C.F.R.§ 404, Subpart P,

9   Appendix 2, § 202.00.  Unskilled work requires little or no judgment to do simple duties that can

10  be learned on the job or in a short period of time that does not focus on working with people. 20

11  C.F.R. § 416.968.  Thus, a person who can only perform simple work and can only have limited

12  interaction with others is still able to perform light unskilled work.  Thus, the testimony of a

13  vocational expert would not be needed.

14         Given the above, the ALJ did not err by applying the grids.  The ALJ's decision is

15  supported by substantial evidence and is free of legal error.

16                                  **RECOMMENDATION**

17         Based on the foregoing, it is recommended that judgment be entered against Plaintiff,

18  Darlene Dunn and in favor of Defendant Commissioner of Social Security.

19         These findings and recommendations will be submitted to the Honorable Lawrence J.

20  O'Neill pursuant to the provisions of Title 28 of the United States Code section 636(b)(l).

21  Within **ten (10)** days after being served with these findings and recommendations, the parties

22  may file written objections with the Court.  The document should be captioned "Objections to

23  Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file

24  objections within the specified time may waive the right to appeal the District Court's order.

25  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

26

27

28         IT IS SO ORDERED. _____

Dated:     **August 30, 2011**                    /s/ **Gary S. Austin**
                                     UNITED STATES MAGISTRATE JUDGE